## ATCHISON, T. & S. F. R. CO. v. MEYERS.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1896.)

### No. 290.

1. APPEAL—SPECIFICATIONS OF ERROR.
    It is unnecessary and cumbersome to give, in a specification of error, the reasons why the ruling complained of is claimed to be erroneous, or to state the fact that the party duly objected and excepted to such ruling, and to further give the grounds of objection.

2. NEGLIGENCE—INSTRUCTIONS—QUESTIONS OF LAW AND FACT.
    It is error to instruct a jury that "it was incumbent on the plaintiff to establish by a preponderance of evidence the alleged negligence, or such parts or portions thereof as may constitute a cause of action"; and, where nothing in the charge explains upon what allegations of negligence there may or may not be a recovery, the error is not cured or immaterial.

3. SAME—MASTER AND SERVANT—RAILROAD COMPANIES—DEFECTS IN FOREIGN CARS—FELLOW SERVANTS.
    Where a railroad company receives in its yard a car of another railroad, and such car is examined, and notice given that it is defective and is to be returned, the company has fulfilled its duty in regard to the car, and is not liable for injuries resulting from such defect, which an employé receives while the car is being shifted about the yard; the negligence in such case, if any, being that of his fellow servants.

4. SAME.
    A railroad company is only required to use reasonable care in examining a foreign car coming into its yards, and is not under a duty to examine it with "sufficient care" to ascertain whether it is in safe condition for use by its employés.

5. PRACTICE—MOTION TO DIRECT VERDICT—ASSIGNMENT OF ERROR.
    A motion to direct a verdict need not be made in writing, and does not require any such accuracy of expression as a request for instruction upon a proposition of law; and an assignment of error on the ruling upon such a motion is not governed by the provision of rule 11 of the circuit court of appeals for the Seventh circuit (11 C. C. A. cii., 47 Fed. vi.), concerning instructions given or refused.

6. SAME—REQUEST TO CHARGE.
    The right to assign as error the refusal of a request to instruct the jury to bring in a certain verdict is not waived by presenting other requests to charge after the first has been refused.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

This was an action by William Meyers against the Atchison, Topeka & Santa Fé Railroad Company to recover damages for personal injuries received while employed as a switchman in the yards of the company. Judgment was given for plaintiff, and defendant appeals.

This is the second writ of error in this case. See 11 C. C. A. 439, 63 Fed. 793, 21 U. S. App. 295. The action is for personal injury suffered by the defendant in error, William Meyers, while employed as a switchman in the yards of the

plaintiff in error at Streator, Ill. The injury consisted in the loss of the right arm, which was crushed between the bumpers or deadwoods of two cars which the defendant in error was attempting to couple. It is alleged in the declaration that on the 22d day of February, 1890, it became the duty of the plaintiff to assist in making up a train of freight cars for the defendant at Streator, and, while so doing, to couple two cars, one of which was standing as part of an incompleted train, and the other was being switched into position for coupling, and was moving at the speed of four miles per hour until brought into contact with the stationary car, at which time the plaintiff attempted to effect the coupling in the usual and necessary way, with a link and pin; that the deadwoods on the cars were of different heights, being on the moving car about three inches lower than on the other car; that one of the deadwoods on the moving car was out of repair, and in an unsafe and dangerous condition, which fact was unknown to the plaintiff, one of the bolts which fastened the deadwood to the car being broken, or the nut belonging thereon off, so that the outer end of the bolt was at the time loose, and projected from the surface of the deadwood about four inches, making the same extremely dangerous; that in the attempted coupling the plaintiff's arm and sleeve were caught by the bolt, and firmly held until the deadwoods came together, forcing the bolt through, and crushing and mangling the arm so that amputation was necessary. It is alleged to have been "the duty of the defendant to have and keep said car in good and safe repair and condition while the same was being so switched, used, run, and hauled by defendant." Breaches of duty and acts of negligence are alleged as follows: (1) "Yet the defendant did not regard its duty or use due care in that behalf, but on the contrary, at the time aforesaid, did carelessly and negligently permit and allow said car to be switched, run, and hauled upon said railroad and in said yard, and used in making up said train, while the said deadwood thereon and said bolt therein were unsafe, defective, broken, out of repair, and in a dangerous condition as aforesaid." (2) "That such improper, unsafe, and dangerous condition of the car aforesaid was the result of negligence upon the part of the defendant in keeping and allowing said car upon its tracks, or allowing it to go into its trains or into its yards, or allowing it to be switched or used by its employés in any manner while in such unsafe and dangerous condition; by allowing the same to pass through its yards without examining the same with sufficient care to ascertain whether the same was in proper and safe condition for the use of its employés; by not having the car repaired at said yard, to examine such car, and by not having an examination made of said car by its employés to determine whether the same was in a safe or unsafe condition; by allowing the same to go into the hands of its yard employés without examining the same, or without having the same examined, and without having the same put in proper condition and repair; and by allowing it to be in such improper condition and repair in its yards, knowing it would have to be handled by its employés; and each of the above is made a specific ground of negligence upon the part of the defendant." Upon the close of the evidence the plaintiff moved the court to direct a verdict for the defendant, and, that motion having been denied, thereupon asked the following instruction, "(1) You are instructed by the court to find a verdict in this case for the defendant"; and, that having been refused, asked, successively, as the bill of exceptions shows, other special instructions, numbered 2, 3, 4, and 5, each of which the court refused. Exception was duly saved to each of these rulings, and also to parts of the charge given, numbered from 1 to 15, and error has been properly assigned upon each exception.

Robert Dunlop and Eldon J. Cassoday, for plaintiff in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

In the interest of brevity and clearness, it is to be observed that the assignment of error in this record contains much redundant and irrelevant matter. The first specification is that the "court erred in denying defendant's motion at the conclusion of all the evidence

to instruct the jury to find a verdict for the defendant." That would have been enough, because it states succinctly just what action is alleged to have been erroneous. But there follows a statement at length of four reasons why the motion should have been sustained. They constitute a good brief, but in the assignment of error are irrelevant. There is also a proper assignment upon the refusal of each request for instruction, but followed in each instance by the statement, quite necessary to be found in a bill of exceptions, namely, "to which ruling * * * defendant then and there duly objected and excepted," etc. Railroad Co. v. Mulligan, 14 C. C. A. 547, 67 Fed. 569, 34 U. S. App. 1. So, too, after each specification of error upon the charge of the court, there is a like out of place statement, not only of the exception, but of the grounds of objection. We think it would be the better practice if the grounds of objection to an instruction were required to be disclosed at the time of objection, and so stated in the bill of exceptions; but elsewhere, unless it be in the briefs, such a statement can be only an incumbrance of the record.

The declaration is framed upon the theory that, in respect to the cars which the plaintiff was coupling when injured, the defendant owed him the ordinary duty which a railroad company owes to its employés engaged in handling its own cars, or the cars of other companies in use upon its lines. It is alleged that the plaintiff was assisting "in making up a train of freight cars for the defendant," that the two cars which he was coupling were "part of the train or trains operated upon defendant's line of railway," and "that it became and was the duty of the defendant to have and keep said car in good and safe repair and condition." Of that duty only is any breach alleged. The case proven, however, if the evidence tends to establish a cause of action upon any ground, is distinctly different. It appears that the car which was out of repair, and which was of the Delaware, Lackawanna & Western make, came from another road, known as the "Three I," into the Santa Fé yards at Streator in the morning of the day of the accident, and was there promptly inspected, found defective, and ordered returned to the Three I, but was permitted to remain on the Santa Fé tracks until 4 o'clock of the afternoon, when, in the rear of a number of other cars, all intended for the Three I road, it was pushed into a Y, whence, in the usual course of business, it would be taken by that company; but standing on the Y was found another car, which it was necessary to remove to a Santa Fé track, and for that purpose the plaintiff was directed to couple the moving Lackawanna car to the standing one, and in making the attempt was injured as stated. The car which caused the injury having been received in the usual course of business from another company, the plaintiff in error owed to its employés in respect thereto, as stated in our opinion upon the first appeal, simply "the duty of making proper inspection, and giving notice of its defects, if any were found." To what extent the inspection in such cases should go, and what character of notice should be given, we were not then required to say, and perhaps need not now attempt to determine with precision. If a car be accepted for transportation over the road of the receiving company,

it is clear that defects which are "visible, or discoverable by ordinary inspection," must be repaired sufficiently to make the use of the car reasonably safe. Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590. But once a car has been found to be out of repair, or so far defective as to justify a refusal to accept it, and there remains nothing to do but to put it upon a switch or other place of redelivery to the company of which it was received, what further inspection should be required, and what notice of defects should be given to employés called upon to. make, or assist in making, the redelivery? If in any case the inspector discovers defects which are not obvious, and which involve more than the usual dangers to those who may be employed in returning the car, special notice, it would seem clear, ought to be given; but, ordinarily, notice to the effect that the car is out of order, and is to be returned to the road from which it came, we think should be sufficient,—certainly if the defect be obvious,—because it would fairly put the brakeman or switchman on his guard, and require of him extra precaution and vigilance to avoid injury.

It results from these considerations that some of the objections made to the court's instructions must be sustained. It was not improper to restate in the charge the various specifications of negligence found in the declaration. The fault of the charge in that respect was in the failure to explain upon what ground, if at all, the action could be maintained, and in telling the jury that "it was incumbent on the plaintiff  *  *  *  to establish by a preponderance of the evidence the alleged negligence, or such parts or portions thereof as may constitute a cause of action." The jury was thereby authorized to judge of the law as well as of the fact, and there being nothing elsewhere in the charge to explain upon what allegations of negligence there might be, and upon what there might not be, a recovery, the error cannot be regarded as cured or as immaterial.

Correcting an inaccuracy in an instruction which was condemned in our former opinion as inapplicable and misleading, the court declared the employer's duty to be "to use ordinary and reasonable care  *  *  *  to furnish its servants or employés with reasonably safe appliances, machinery, tools, and working places, and also to exercise ordinary and reasonable care at all times to keep them in a reasonably safe condition of repair." The general doctrine thus stated was not applicable to the case, and, it is not unlikely, was misleading or confusing, though followed immediately by a statement (which, so far as it went, was perhaps not objectionable) of the rule concerning the inspection and giving of notice of defects in foreign cars. It did not go far enough, because no distinction was made between cars accepted for use and those rejected and ordered returned. The jury may have understood that they were to determine the case both by the general and by the particular rule stated.

In respect to foreign cars found to be defective, the court also instructed that the company receiving must return or repair them, and that, "if it does not repair, then it must return the cars in a

reasonable time, and in a reasonable manner; in other words, it cannot use such cars in its yards, or handle the same as if not defective." This was erroneous. The car in question remained in the Santa Fé yards from an early hour in the morning until 4 o'clock in the afternoon, and meanwhile was shifted in position perhaps two or three times; but if in that respect, or in the manner in which the return and redelivery to the Three I Company were attempted, there was negligence, it was the fault of co-servants of the plaintiff, for which the company would not have been responsible if injury had resulted. The only vice principal or representative of the railroad company in the occurrences of the day was the inspector, and he represented the company only in the inspection of the car, and in the giving of notice of defects. The company owed to the defendant in error no duty in respect to the time or manner of return. If the car had been retained in the Santa Fé yards by the order or authority of a general superintendent or other general officer of the company, and the plaintiff, being required to work about it, had suffered injury by reason of its defective condition, he would doubtless have had cause for complaint; but the crews engaged in the yards at Streator, including yard master, foremen, and engineers, were all his fellow servants, and for what they did with the car after the inspection, and after notice that it was to be returned to the other road, the plaintiff in error is not amenable.

The more important question in the case is whether the court should have directed a verdict for the defendant. It is contended that this question is not properly presented by either the first or second specifications of error. The objection to the first specification is that it in no manner specifies the motion, or the ground thereof, nor refers to the portion of the record where it may be found. The bill of exceptions shows that upon the close of the evidence "the defendant entered its motion that the court direct the jury to find a verdict therein for the defendant." The motion, it is evident, was not in writing, like a special request for instruction, and it is not our opinion that it needed to be. Instructions proper are for the guidance of the jury in determining a case or question which is left to their decision. The peremptory direction of a verdict withdraws a case from the jury, and, as it requires no such accuracy of expression as a request for instruction upon a proposition of law, only an informal motion is necessary; and, whether it be sustained or overruled, an assignment of error on the ruling is not governed by the provision of rule 11 (11 C. C. A. cii., 47 Fed. vi.), concerning instructions given or refused.

The second specification is upon a formal request for a written instruction to the same effect as the motion, but, it is insisted, is not available, because instructions upon other propositions were asked at the same time. It appears by the bill of exceptions, however, that the peremptory instruction was asked first, and then the others; and we are of opinion that the right to assign error upon the refusal of the first request was not waived by the presentation of others after that had been denied. Indeed, we perceive no necessary objection to the presentation of such requests together, with

a prayer—which, if unexpressed, perhaps ought to be inferred—that if the first be refused the others be given.

We are of opinion that the defendant was entitled to the verdict asked. As already explained, the case alleged is not proved, and the case now insisted upon is neither alleged nor proved. It is not alleged that the car which was defective was not inspected. The proof is that it was inspected, and that it was declared out of order and directed to be returned. The only approximation to a charge that there had been an insufficient or negligent inspection is in the indirect and incoherent averment already quoted, that the unsafe condition of the car "was the result of negligence on the part of the defendant, * * * by allowing the same to pass through its yards without examining the same with sufficient care to ascertain whether the same was in proper and safe condition for the use of its employés." But the company was required only to use reasonable care, and was not under a duty to the plaintiff to examine with sufficient care to ascertain whether the car was in condition for acceptance and use, or whether it ought to be returned, and in the latter case to notify the employés by whom the return should be made. It is an indispensable element of the right of recovery in the case that there should have been a negligent failure to notify the plaintiff that the car was out of order, but the declaration contains no such averment, nor its equivalent. The plaintiff alleges "that he had reason to believe, and did believe, that the cars were in safe condition and in good repair, and that, acting upon such belief, and without time for an examination under his duties, but being compelled to act instantly, he used all due diligence in making such coupling to avoid injury." But his own testimony shows that from the mouth of the inspector, in the morning, he heard the car condemned and ordered returned, that when about to make the coupling he recognized the car as the same, and that he was under no necessity to act hurriedly, or without making such examination as was necessary to insure his own safety. If he acted hastily, it was of his own choice, or in obedience to the command or urgence of fellow servants. It is also alleged "that all such defective and unsafe and dangerous condition was unknown to the said Meyers, and could not have been known to him by using ordinary and reasonable care." But that is not equivalent to an averment that the inspector failed to give him notice or proper warning of the defective condition of the car; and on the evidence it is manifestly not true that by the exercise of even slight care the plaintiff could or would not have discovered the dangerous condition of the car before putting himself in a place of danger from it. When, in the morning, he learned that the car was out of repair, he might well have examined the couplings and brakes for himself, or have inquired into the nature of the defects, but it does not appear that he did either; and when, later, he was directed to make the coupling, it being admitted that he then knew the car to be the one which had been ordered returned because it was out of order, it cannot be true, as alleged, that he believed, or had reason to believe, that the car was in good condition. If at the time of inspection, or at any time before the ac-

cident, a bolt projected three or four inches from the deadwood, it was in plain sight, and should have been observed by the plaintiff, if exercising even the ordinary caution of one engaged in the dangerous operation of coupling moving cars, and certainly if exercising the extra care required of him when he knew that the car was in bad condition. Instead of extra or even ordinary vigilance, the plaintiff's testimony is in effect an admission that when about to make the coupling he gave no special attention to the deadwoods of the approaching car, or to the question of his safety. Without any observation of the moving car from which he had just climbed down, and which was moving at a speed between two and three miles an hour only, he went forward to the standing car, and took position with his back to the approaching car. He did not, while advancing or standing, turn to look until, when the deadwood was "something like two feet" behind him, he turned enough to grab the link, "and tried to make the coupling." Choosing to do it in that way, he of course acted quickly, and perhaps without time, even if at the instant he had observed a projecting bolt in the deadwood, to change his mode of action. But the first he knew of the bolt was after the accident, when he found his coat sleeve caught upon it. It was "a round-headed bolt, with a sharp edge." The size of the head was "between a nickel and a quarter of a dollar." His arm was "all mashed through the elbow, and right down between the elbow and wrist." The bolt "struck the elbow." He also testified that the bolt passed through his arm, but manifestly that was only an inference, since he saw it first as caught in his coat sleeve. The wound, as described by the surgeon, showed no sign of having been pierced; and the strong probability is that the bolt did not project before the deadwoods came together, but, its sharp edge catching on the coat sleeve, it was drawn out as the cars separated. If it did not project in the morning, the inspector, having found the car otherwise unfit for acceptance, was not at fault in failing to discover that it was broken, or the nut off from its inner end; and, if it was projecting at the time of the attempted coupling, it was a patent object, which the plaintiff, knowing the car to be out of order, should have observed. Disregarding therefore, if we may, the mistaken theory of the declaration, and the total lack of proof of its essential averments, we find in the record no proof that the railroad company neglected any duty which it owed to the defendant in error, while, on the other hand, we deem it clear, upon his own testimony, that his injury, if it could be said to have come from a hazard of which he did not assume the risk when taking employment, was attributable to his own heedlessness and disregard of a danger against which he had been fairly put upon guard. The judgment is therefore reversed, and the cause remanded, with direction to grant a new trial.