## SCULLIN v. HARPER.

(Circuit Court of Appeals, Seventh Circuit. February 11, 1897.)

### No. 253.

1. SLANDER—WORDS SPOKEN OF EMPLOYE—ADMISSIBILITY OF EVIDENCE.
  In an action for slander, where the defendant claims that the words spoken were privileged, because spoken by him in good faith, as a stockholder in a corporation, to an officer thereof, concerning one of its employés, it is competent for the defendant to testify that what he said was upon information, without malice, in the belief that it was true, to state any relevant part of the conversation in the course of which he uttered the alleged slander, including statements made by him of the nature of the information he claimed to have, and also to testify to the purport of an entry in a book, claimed to be the basis of his statements, without producing the book itself.

2. SAME—PRIVILEGED COMMUNICATIONS.
  Communications, made by a stockholder of a corporation to an officer thereof, of matters concerning its employés, which, if true, are proper to be so communicated, are privileged, and, unless spoken with actual malice, the burden of proving which is on the plaintiff, do not give ground for an action for slander.

3. SAME—TRIAL—INSTRUCTIONS.
  In an action for slander, based on words, some of which are actionable per se, and others not, it is error to charge the jury that, if the defendant spoke the words, or any portion of them, actionable in themselves, the plaintiff

is entitled to recover, since this leaves it to the jury to determine whether any portion of the words charged is actionable.

4. SAME—WRITING—PAROL EVIDENCE.

The rule that parol evidence of the contents of writing is not competent does not apply to a writing which is collateral only to the issue and not directly involved.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

Charles W. Thomas, for plaintiff in error.

Luke H. Hite, Charles P. Wise, and George F. McNulta, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. This was an action of slander. The trial resulted in a verdict and judgment for the plaintiff. Matters of inducement and innuendo omitted, the several counts of the declaration charge the utterance of the following words: "He is a dangerous man." "He is a perjurer." "He is a perjurer and a blackmailer." "He belongs to a gang that is organized in East St. Louis to extort money from our street railroad." "He went to Springfield, and swore to a lot of lies." "Another member of the gang is a relative of his, a Dr. Anthony, and between them they worked up a scheme, and got a judgment against us." These things, it is alleged, were said by Scullin, the plaintiff in error, concerning Harper, the defendant in error, in the presence and hearing of divers persons, on the 27th day of July, 1893, at East St. Louis. Error is assigned upon the rulings of the court in excluding evidence, and in giving and refusing instructions to the jury. Prior to July 27, 1893, Harper, who is a carpenter, had been in the employment of the East St. Louis Ice & Cold Storage Company as foreman of the ice gang, and shortly before that date had gone to Springfield as a witness for the plaintiff in a case in the United States circuit court against the East St. Louis Electric Street-Railroad Company, in which the plaintiff in error was interested as a stockholder, and had testified adversely to the company. The plaintiff in error, who resides in St. Louis, was also interested in the East St. Louis Ice & Cold Storage Company, owning a large amount of the stock, but was not an officer, agent, or manager of the company. W. S. Hodges, also a resident of St. Louis, was a director and the secretary and treasurer of the company, and in the absence of the president had supervision of its affairs; and it was in a conversation with him, and in the hearing of none other, on July 23, 1893, at St. Louis, that the plaintiff in error uttered concerning the defendant in error any of the obnoxious expressions complained of. Hodges, the only witness called to prove that the words were spoken, testified that between 11 and 12 o'clock on that morning Scullin came to his office in St. Louis, and requested him to go with him after dinner to the ice factory, saying "that there was a bad man there he wanted to get rid of"; that thereupon he named Harper, and used concerning him some of the expressions set out in the declaration; that two hours later he met Scullin, went with him across the river to East

St. Louis, where, after and in consequence of conferences concerning which the testimony heard and offered is to some extent conflicting, Harper was notified of his dismissal from the service of the company. Scullin, as a witness in his own behalf, testified that when he called on Hodges in St. Louis he said, "I told Hodges what I had heard, and asked him to go over to East St. Louis with me, and investigate the matter," and that on their arrival at the office of the ice plant he requested the bookkeeper to bring in Harper's time book and to refer to a certain date, and thereupon was asked to state what the time book showed "as to the time that Harper worked on the day of the accident, and where he worked." The plaintiff objected to this question, and the court sustained the objection. Being then asked what he said to Hodges about Harper, and where it was said, he answered: "It was in that office. I said, 'If this is true, then this is a dangerous man to have around here.' The gist of the conversation was in that office, after Mr. Hodges had investigated and found out what I desired to have him find out. It was after that. I made no remarks about this plaintiff until after we had found out what I desired Mr. Hodges to find out. I then said to Mr. Hodges, 'If this be true, he is a dangerous man to have around this plant.'" To the question whether he told Hodges to what facts he alluded by "if this be true," an objection was sustained, and the further question what the witness and Hodges both understood by "this being true" was not allowed to be answered. The witness was then asked, but not permitted to answer, whether at the time, from the facts that he had ascertained, he in good faith believed to be true what he said to Mr. Hodges, and whether or not at the time of his conversation with Hodges he had not been credibly informed, and did not actually believe, that his statements and representations to Hodges were true, "and made them with no ill feeling to the plaintiff, but with reference to his own interests."

The question of malice or good faith was an essential part of the issue, and it was certainly competent for the defendant, when called as a witness, to testify, if he would, that what he had said of the plaintiff was said upon information, without malice, and in the belief that it was true. If the truth of the proffered testimony was questionable, it was the province of a cross-examination into the source of the alleged information to expose the attempt at imposture. It is equally clear, because pertinent to the question of malice, that the witness should have been allowed to state any relevant part of his conversation with Hodges. If he told Hodges the source of his information, or what his information was, that was relevant and competent. It was, of course, not competent for the witness to state what Hodges understood, but the other questions were proper. The objection that what was said in the office at East St. Louis was not a part of the conversation testified to by Hodges as having occurred at St. Louis is not sound. Upon Hodges' own testimony, when the conversation began in St. Louis, it was in the contemplation of the parties to go to East St. Louis in reference to the subject of the interview; and according to Scullin it was not until after an examination of the time book at East St. Louis

that he said anything derogatory of Harper except to tell Hodges what he had heard. The talk on both sides of the river was upon one subject, was essentially one conversation, and, under the circumstances, it was error to withhold any important part of it from the jury. The significance claimed for the entry in the time book was that it showed Harper at work at a time and place which made impossible the truth of his testimony in the case at Springfield against the street-railway company. The relevancy of the entry is therefore clear, and the objection that it could be proved only by the production of the book, or by an exemplified copy of the entry, is not tenable. The entry was not directly involved in the issue. It was merely a collateral incident, and the rule that excludes parol evidence of the contents of a writing does not apply. 1 Greenl. Ev. § 89; Carter v. Pomeroy, 30 Ind. 438. The exact terms of the entry were not in question, and it was important only to know what Scullin understood its import to be.

The letter of Hodges, which was first admitted in evidence and afterwards excluded, was competent, brought out as it was upon the cross-examination, for the purpose of affecting the credibility of the witness. 1 Greenl. Ev. § 463, and notes.

The court was asked but refused to give a number of special instructions to the effect that as a shareholder in the East St. Louis Ice & Storage Company the plaintiff in error was privileged to speak freely with Hodges, a managing agent, concerning an employé of the company, and that his words, unless spoken with actual malice, of which the burden of proof was with the plaintiff, were not actionable. Whether these requests for special instructions were all unobjectionably worded, we have not considered. Upon the undisputed facts it is clear that the communications in question were of a privileged character. "So are all communications by members of corporate bodies, churches, and other voluntary societies, addressed to the body, or any official thereof, and stating facts which, if true, it is proper should be thus communicated." Cooley, Torts, 252. This doctrine the court ignored entirely in its charge, and, after stating that the "imputations" alleged "are actionable in and of themselves," told the jury "that if the defendant spoke and published the slanderous words as charged in the declaration, or any set or portion of them, actionable in themselves, then the plaintiff is entitled to recover." This expression, two or three times repeated, in substance, in the course of the charge, besides excluding the question of privilege, is objectionable because it left to the jury to determine whether any portion or any set of the words charged was actionable. See Railroad Co. v. Meyers, 22 C. C. A. 268, 76 Fed. 443. That the words, "he is a dangerous man," are not actionable in themselves is clear. The nearest approach to a recognition of the doctrine of privilege was in the instruction that the defendant was not prevented, by the legal presumption of malice, from showing that the words were not spoken maliciously; but this itself involves error. The words having been spoken under privileged circumstances, the presumption was that they were spoken without malice.

On a quotation from Odgers on Libel and Slander (page 173) it is contended that only necessary communications can be privileged, and that, unless "compelled to employ the very words complained of," the plaintiff in error was not at liberty to utter them. A privilege so restricted would not be a privilege. The case is not supposable in which words different from those used might not have been employed. It is a question of good faith on the part of the speaker. If the words used appear under the circumstances to have been needlessly harsh, or extravagant, or improbable, the jury for that reason may infer bad faith or malice, but it is not for the court to withhold or withdraw the question from the jury, when, on the situation as it was, the words, if uttered in good faith, were privileged. The judgment is reversed, and the cause remanded, with direction to grant a new trial.