ISBELL v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   November 13, 1915.)

No. 4279.

*(Syllabus by the Court.)*

1. CRIMINAL LAW ⊛⇒1036—PRESENTATION FOR REVIEW—SUFFICIENCY OF EVIDENCE—REQUEST FOR DIRECTED VERDICT.

A request by a defendant at the close of the evidence for a directed verdict in his favor presents to the trial court for decision the question of law whether or not there is any substantial evidence to sustain a verdict against him, and no farther specification to the trial or the appellate court of the basis of the request is requisite to a review by the appellate court of the refusal of the request on the ground that there was no such evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1631–1640, 2639–2641; Dec. Dig. ⊛⇒1036.]

2. CRIMINAL LAW ⊛⇒753, 1159—DIRECTION OF VERDICT—DECISION ON APPEAL—EVIDENCE.

Evidence of facts as consistent with innocence as with guilt is insufficient to sustain a conviction.   Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial judge to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment against him.

. [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1713, 1727–1739, 3074–3083; Dec. Dig. ⊛⇒753, 1159.]

3. INDIANS ⊛⇒38—INTRODUCING LIQUOR INTO INDIAN COUNTRY—SUFFICIENCY OF EVIDENCE.

Introducing intoxicating liquor into that part of Oklahoma that was formerly the Indian Territory from without the state, in violation of Act March 1, 1895, c. 145, 28 Stat. 693.   Evidence considered, and *held* insufficient to sustain a conviction.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 22, 64, 66; Dec. Dig. ⊛⇒38.

Introducing intoxicating liquors into Indian country, see note to Joplin Mercantile Co. v. United States, 131 C. C. A. 171.]

' Carland, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Thomas Isbell was convicted of unlawfully introducing liquor into what was formerly the Indian Territory, and brings error.   Reversed and remanded, with directions to grant new trial.

William P. Thompson, of Vinita, Okl., for plaintiff in error.

D. H. Linebaugh, U. S. Atty., of Muskogee, Okl., and George Miller, Jr., Asst. U. S. Atty., of Eufaula, Okl.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge.   The defendant below, Thomas Isbell, was indicted, convicted, and sentenced to imprisonment for two years

and to pay a fine of $100 for introducing from without the state of Oklahoma into that portion of that state which was formerly the Indian Territory one quart of whisky and wine, in violation of the Act of Congress of March 1, 1895, 28 Stat. c. 145, p. 693. He assigns as error, among other things, that the court below refused his request, at the close of all the evidence, that it instruct the jury to return a verdict in his favor.

[1] Counsel for the United States meet this complaint with the contention that it presents no question for review because defendant's counsel failed to state any specific ground or reason for a directed verdict in his favor and quote these words as from the opinion of this court in Horn v. United States, 182 Fed. 721, 105 C. C. A. 163:

"Where no ground is assigned in the trial court as a basis for the direction of an acquittal, an assignment based on the overruling of the request therefor may be disregarded on appeal."

A careful reading of that opinion, however, fails to disclose that statement, or any decision to that effect. What was said on that subject was in these words:

"At the close of all the testimony, each of the defendants requested the court to direct the jury to return a verdict in his favor, which request was denied and an exception saved. No ground was assigned, or suggestion made, as a basis for this request. The assignment of error based upon this ruling is that the court erred in overruling this request. The attention of the trial court not having been called to any ground upon which the request was made, this assignment might well be disregarded for this reason alone. It is urged, however, in behalf of each defendant, that there is no testimony that would warrant a verdict against him, or sustain one if found, and that a verdict should have been directed in his favor for this reason. In view of this the testimony has been considered."

The court then proceeded through seven printed pages to state and review the testimony and declared its conclusions in these words:

"A careful and patient consideration of the entire testimony, in the light of the objections urged against its sufficiency forces the conclusion that it would have been error to have withdrawn it from the consideration of the jury, and that it is amply sufficient to sustain the verdict against each of the defendants. There was no error, therefore, in denying the requests for an instructed verdict in their favor." Horn v. United States, 182 Fed. 721, 730–737, 105 C. C. A. 163.

Thus it appears that the court did not consider, determine, and adjudge that an assignment of error based on the overruling of a request for a directed verdict might be disregarded on appeal where no ground for the request was assigned in the trial court, and it did not base its judgment against the plaintiffs in error upon that ground. On the other hand, it considered the alleged error in denying the requests, defeated the plaintiffs in error on the ground that the requests were rightfully refused, and its remark that, "the attention of the trial court not having been called to any ground upon which the request was made, this assignment might well be disregarded for this reason alone," was not a decision of the question it suggests on which the judgment of the court in any degree rested, but a mere dictum, which, in the felicitous language of Chief Justice Marshall, "ought not to control the judgment in a subsequent suit when the very point

is presented for decision." Cohens v. Virginia, 6 Wheat. 264, 398, 5 L. Ed. 257; King v. Pomeroy, 121 Fed. 287, 294, 58 C. C. A. 209. That remark is not, therefore, controlling in this case, in which the very point must necessarily be decided, and we proceed to its consideration.

At the close of the evidence in every trial by jury the question of law, not whether the weight of the evidence sustains the claims of the plaintiff or the defendant, but whether or not there is any substantial evidence to sustain the claim of the plaintiff, necessarily and unavoidably arises, and the duty rests upon the trial court to direct a verdict for the defendant if there is no such evidence. Brady v. Chicago G. W. Ry. Co., 114 Fed. 100, 105, 52 C. C. A. 48, 52, 53, 57 L. R. A. 712; Cole v. German Savings & Loan Soc., 124 Fed. 113, 121, 122, 59 C. C. A. 593, 601, 602, 63 L. R. A. 416; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 508, 61 C. C. A. 477, 490, 63 L. R. A. 551; Chicago Great Western Ry. Co. v. Roddy, 131 Fed. 712, 713, 65 C. C. A. 470, 471; Western Union Tel. Co. v. Baker, 140 Fed. 315, 319, 72 C. C. A. 87, 91; First Nat. Gold Min. Co. v. Altvater, 149 Fed. 393, 397, 79 C. C. A. 213, 217; Missouri Pac. Ry. Co. v. Oleson, 213 Fed. 329, 330, 130 C. C. A. 31, 32.

A request by the defendant for a directed verdict as necessarily and unavoidably presents this question of law to the mind of the trial judge for decision and to the mind of every lawyer within hearing of the request. No statement to the court that the ground of it is the absence of substantial evidence to sustain the plaintiff's cause of action could call that ground more forcibly to its attention than the request itself, because that is the ground which first occurs to the mind and on which such a request is ordinarily based. It has been the practice of this court and of other appellate courts for many years to treat a request for a directed verdict for a defendant, without more, as a sufficient specification of the ground that there was no substantial evidence to sustain a verdict for the plaintiff and to review refusals to grant such requests. Chicago, Milwaukee & St. Paul Ry. Co. v. Bennett, 181 Fed. 799, 801, 104 C. C. A. 309, 311; Hedderly v. United States, 193 Fed. 561, 571, 114 C. C. A. 227, 237; Atchison, Topeka & S. F. Ry. Co. v. Meyers, 76 Fed. 443, 444, 447, 22 C. C. A. 268, 269, 272; Wiborg v. United States, 163 U. S. 632, 658, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289.

Indeed, this court has gone so far as to sustain a directed verdict for the defendant on this ground, although it was not specified, and the verdict was directed on a specified, but untenable, ground, and that for the reason that the question of law whether or not there is any substantial evidence to sustain a verdict for the plaintiff always arises at the close of the evidence. Bank of Havelock v. Western Union Telegraph Co., 141 Fed. 522, 526, 527, 72 C. C. A. 580, 4 L. R. A. (N. S.) 181, 5 Ann. Cas. 515. For these reasons the conclusion is that a request by a defendant at the close of the evidence for a directed verdict in his favor presents to the trial court for decision the question of law whether or not there is any substantial evidence to sustain a verdict against him, and no farther specification to the trial

or to the appellate court of the basis of the request is requisite to a review by an appellate court of the refusal of the request on the ground that there was no such evidence.

[2, 3] Was there any substantial evidence that the defendant introduced whisky or wine into that portion of Oklahoma which was formerly the Indian Territory from without that state? There was substantial evidence of these facts: Isbell was the owner of drays and teams engaged in the transportation of goods at Vinita, in Oklahoma, and had been for many years. One Hostetler came to him with a bill of lading marked "HH," which usually means household goods, and told him he had a load of household goods at Chetopa, Kan., which he wanted hauled to Tiff City, Mo. It was conceded at the trial that the transportation of intoxicating liquors from Chetopa across the part of Oklahoma that was formerly the Indian Territory to Tiff City would not be a violation of the act of 1895, and the court so instructed the jury. Isbell took the bill of lading and agreed to haul the goods to Tiff City. His teams were in use, and he hired a team of one Newman, and employed one Silvey to drive the team and take the goods from Chetopa to Tiff City. Silvey obtained the team, took the bill of lading to Chetopa, loaded the goods, and was hauling them to Tiff City, across Oklahoma, by way of Vinita, when he was arrested by deputy marshals, and barrels of whisky in bottles and a box of bottles of wine, two or three of which were marked "For Mrs. Isbell," were found in his load and confiscated.

The decisive questions of fact became whether or not Isbell knew the goods were intoxicating liquors, and whether their destination was Missouri or Oklahoma. On the first question the evidence was the testimony of Isbell that he did not know they were liquors, that they were marked household goods on the bill of lading, that Hostetler told him they were household goods, and that he believed they were such, the testimony of Doggett that, at the trial of Silvey, Isbell had testified that he did not know the goods were intoxicating liquors, that they were not his goods, but were Hostetler's, that he knew Hostetler was in the whisky business at Tiff City, that Hostetler was present at Silvey's trial, and testified they were his goods, and the testimony of Robertson that Isbell testified at Silvey's trial that he was in partnership with Hostetler, and that the liquor was being hauled from Chetopa to Tiff City, because they did not want it delivered by the railroad company at Tiff City. After Robertson had testified, Isbell testified that he never was in partnership with Hostetler, that he never testified at Silvey's trial that he was in partnership with him, or that he knew the goods were intoxicating liquors, and that in fact Hostetler was a perfect stranger to him when he brought him the bill of lading. On the second question, whether the destination of the goods was Oklahoma or Missouri, the only evidence that it was Oklahoma was the fact that the liquor was seized on the road from Chetopa to Vinita, 18 miles from the former place, and that two or three of the bottles of wine were marked "For Mrs. Isbell." But there was no evidence that the bottles of wine were so marked by Isbell, or with his knowledge or consent. On the other

hand, Isbell testified that their destination was Tiff City, Mo., and Doggett and Robertson testified that at Silvey's trial Isbell testified that he was hiring Silvey and the team to haul them to Tiff City, Mo.

If, as Isbell testified, he was causing the goods to be transported from Chetopa, across a part of Oklahoma, to Tiff City, he was innocent of a violation of the law. It was essential to his lawful conviction that there should be proof, beyond a reasonable doubt, that he was knowingly taking them into Oklahoma for consumption, sale, or use in that state, and the burden was on the government to make this proof. There was a legal presumption that he was innocent until he was proved to be guilty beyond a reasonable doubt. "Evidence of facts that are as consistent with innocence as with guilt is insufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt it is the duty of the trial judge to instruct the jury to return a verdict for the accused, and where all the substantial evidence is as consistent with innocence as with guilt it is the duty of the appellate court to reverse a judgment against him." Union Pacific Coal Co. v. United States, 173 Fed. 737, 740, 97 C. C. A. 578, 581; Vernon v. United States, 146 Fed. 121, 123, 124, 76 C. C. A. 547, 549, 550; Hayes v. United States, 169 Fed. 101, 103, 94 C. C. A. 449, 451; W. F. Corbin & Co. v. United States, 181 Fed. 296, 305, 104 C. C. A. 278, 287; Prettyman v. United States, 180 Fed. 30, 43, 103 C. C. A. 384, 397; Harrison v. United States, 200 Fed. 662, 664, 119 C. C. A. 78, 80; United States v. Richards (D. C.) 149 Fed. 443, 454; United States v. Hart (D. C.) 78 Fed. 868, 873, affirmed in Hart v. United States, 84 Fed. 799, 28 C. C. A. 612; United States v. McKenzie (D. C.) 35 Fed. 826, 827, 828.

The criticism of the first clause of the last sentence quoted, that under it the trial court must necessarily pass upon the weight of the evidence and the credibility of the witnesses, and that it is equivalent to saying that unless the trial judge believes the defendant guilty beyond a reasonable doubt he must direct a verdict of acquittal, has not been deemed sound for the following reasons: It is certain that evidence of facts as consistent with innocence as with guilt is not sufficient to sustain a conviction, and that at the close of every trial by jury it is the duty of the court upon request to consider and determine whether or not there is any substantial evidence of the guilt of the accused, and, if there is none, to instruct the jury to return a verdict for the defendant. If there is, at the conclusion of a trial, no substantial evidence of facts which exclude every other hypothesis but that of guilt, there is no substantial evidence of the guilt of the accused, for facts consistent with his innocence are never evidence of his guilt. Nor does the duty of the court to consider and determine whether or not there is substantial evidence of facts which exclude every other hypothesis but that of guilt require the court, in our opinion, to pass upon the weight of the evidence, the credibility of the witnesses, or to direct an acquittal unless he believes the defendant guilty beyond a reasonable doubt. It requires nothing of him but the performance of the ordinary duty which, upon request, devolves

upon him in every jury trial, the duty to determine whether or not at the close of the trial there is any substantial evidence against the defendant, and if there is none to direct a verdict in his favor. The judge is to consider and determine, not whether or not the weight of conflicting evidence or the preponderance of the credibility of contradictory witnesses establishes facts which exclude every other hypothesis but that of guilt, but only whether or not there is any substantial evidence whatever of such facts, and, if there is none, to direct a verdict in favor of the defendant. Nor does the discharge of this ordinary duty seem to us to require him to consider or determine in any case where the evidence is conflicting, or in any case in which there is any substantial evidence of the guilt of the defendant, whether in his opinion the defendant is innocent or guilty, much less does it require him to direct a verdict unless he believes him guilty beyond a reasonable doubt. In our opinion it requires nothing more of him than to consider and determine whether or not there is any substantial evidence against him, and if there is not to direct his acquittal.

Nor are we persuaded of the soundness of the contention that the rule that "where all the substantial evidence is as consistent with innocence as with guilt it is the duty of the appellate court to reverse the judgment against the accused" is unsound, or that it requires the appellate court to determine any question of fact except the question which it is always the province of the court to determine, whether or not there was any substantial evidence of the guilt of the accused. The rule is that where *all* the substantial evidence was as consistent with innocence as with guilt it is the duty of the appellate court to reverse the judgment against a defendant, not where there was a preponderance of the substantial evidence, or witnesses of the greater credibility in favor of his innocence, but where there was no substantial evidence, no substantial testimony nor credible witness whatever, of any facts inconsistent with the innocence of the accused. This is the only question the court is required or permitted to determine under this rule, and where there was any substantial evidence inconsistent with the innocence of the accused, although it may have been contradicted and overwhelmed by the testimony to the contrary, the weight of the evidence, the credibility of the witnesses and the guilt or innocence of the defendant are left to the determination of the jury. It is certainly the duty of an appellate court in a proper case to reverse a judgment against a defendant, where there is no substantial evidence to sustain it. There is no substantial evidence to sustain a judgment against an alleged criminal, where all the substantial evidence is as consistent with innocence as with guilt, where there is no substantial evidence whatever of facts inconsistent with his innocence, and in such a case it cannot be doubtful, as it seems to us, that it is the duty of the appellate court to read the evidence, to find out and decide whether or not there was any substantial evidence of facts inconsistent with his innocence, and, if there was none, to relieve him from the unjust judgment, and that is all that this rule requires of the appellate court. These views seem to us to have been sustained by the authorities cited under them above.

No witness came to testify that the destination of the goods was in the state of Oklahoma. All the testimony was to the effect that it was Tiff City, Mo., the route over which the goods were removed was not inconsistent with that destination, the marks "For Mrs. Isbell" on two or three wine bottles, unsupported by any proof tending to show who made them, do not rise to the dignity of evidence, and there was no substantial evidence, nothing but suspicion, that their destination was Oklahoma, or that Isbell was consequently guilty.

The judgment below is therefore reversed, and the case is remanded to the court below, with directions to grant a new trial.

CARLAND, Circuit Judge (dissenting in part). This case is here on writ of error. It is elementary that only questions of law may be considered. The question whether there is substantial evidence to support the verdict is a question of law. I concur in the result reached by the majority, for the reason that there is no substantial evidence to support the verdict upon some of the material issues. There are, however, certain propositions of law stated in the opinion of the majority in which I am unable to concur. The propositions referred to are as follows:

"Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt it is the duty of the trial judge to instruct the jury to return a verdict for the accused, and where all the substantial evidence is as consistent with innocence as with guilt it is the duty of the appellate court to reverse a judgment against him."

This statement of the law received the approval of this court in Union Pacific Coal Co. v. United States, 173 Fed. 737, 97 C. C. A. 578. In view of the learning and ability of the judges who rendered the decision in the case cited, and of my Brothers who concur in the majority opinion, it is with some hesitation that I dissent from the propositions stated. Regarding the propositions, however, as fundamentally erroneous, I briefly state the reasons for my dissent. The first proposition is as follows:

"Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt it is the duty of the trial judge to instruct the jury to return a verdict for the accused."

This rule, if enforced, in my judgment would constitute the trial judge the trier of the facts in every criminal case. It is urged in support of the same that it presents to the trial judge the question as to whether there is substantial evidence to support a verdict of guilty. I do not think this is so. In order for the trial judge to determine whether there is substantial evidence of facts which exclude every other hypothesis but that of guilt, he must necessarily pass upon the weight of the testimony, and this includes the passing upon the credibility of the witnesses. As stated, the proposition contended for is equivalent to saying that, unless the trial judge believes the defendant guilty beyond a reasonable doubt, he must direct a verdict of acquittal. Certainly this is not the law.

The next proposition is as follows:

"* * * And where all the substantial evidence is as consistent with innocence as with guilt it is the duty of the appellate court to reverse the judgment against him."

In view of the undoubted law that on a writ of error this court is limited to the consideration of questions of law, I am of the opinion that this rule of law is unsound. To determine whether all the substantial evidence in the case is as consistent with innocence as with guilt is to determine a question of fact. For illustration, suppose there are five witnesses in a case who testify to facts tending to show guilt, and the very same number of witnesses should testify directly contrary to facts tending to show innocence, may this court reverse the case because the evidence is as consistent with innocence as with guilt—surely not, for in order to determine whether the evidence is as consistent with innocence as with guilt this court must weigh the evidence, and there is included in this proceeding the determination of the credibility of the witnesses. In determining whether there is substantial evidence to support the verdict, the court does not pass upon a question of fact, but simply determines whether there is substantial evidence to support the verdict, regardless of its weight or credibility. I deem the keeping of court and jury within their legitimate spheres of sufficient importance to justify this dissent. The explanation of what the language which I object to means as set forth in the majority opinion demonstrates, in my opinion, that it would be well to omit the language objected to.

---

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes