**UNITED STATES of America**

v.

**John DOE, Appellant.**

**No. 83–1793.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1984.

Decided March 27, 1984.

David Carey Woll, Rockville, Md., for appellant.

Daniel S. Seikaly, Asst. U.S. Atty., with whom, Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell and John C. Martin, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee U.S.

John H. Suda, Principal Deputy Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel and Lutz Alexander Prager, Washington, D.C., were on the brief, for appellee District of Columbia.

Before TAMM, WALD and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This case raises the question whether the automatic set-aside of a conviction under the Federal Youth Corrections Act (FYCA), 18 U.S.C. §§ 5005–5026, requires the district court to seal court records that disclose the conviction. The district court set aside appellant's conviction, but denied his motion to seal the court record of that conviction. Relying upon our prior rationale in *Doe v. Webster*, 606 F.2d 1226 (D.C. Cir.1979), which held that the set-aside provision precludes general public access to FBI "conviction records," we now hold that the same provision also requires the district court to restrict public access to court records that disclose a set-aside conviction.

## I. BACKGROUND

Appellant pled guilty in district court to unlawful possession of cocaine, a misdemeanor. *See* D.C.Code Ann. § 33–502. On August 18, 1980, the district court sentenced appellant to three years probation under the FYCA. 18 U.S.C. § 5010(a). Appellant was unconditionally discharged from probation prior to expiration of the three year term and his conviction was set aside under 18 U.S.C. § 5021(b).[1] Pursuant to the FYCA's set-aside provision, as interpreted by *Webster*, 606 F.2d at 1244, the district court also ordered the FBI to close off all records of the conviction to everyone except law enforcement authorities for use in criminal investigations.

Appellant argues that these actions do not sufficiently comply with the FYCA. He now holds a bachelor's degree, and is presently enrolled in a graduate program abroad. He hopes to pursue a teaching career afterwards, and fears that his arrest and court records may prevent him from doing so. For these reasons, appellant moved the district court to seal his court file and to order that the District of Columbia Metropolitan Police Department (MPD) remove records of his arrest from publicly accessible files. The district court denied both requests, stating only that under *Webster* "set-aside never requires expunction of arrest records." *United States v. Doe*, Cr. No. 80–254 (D.D.C. July 11, 1983) (Or-

---

1. The FYCA provides:
 Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect. 18 U.S.C. § 5021(b).

der denying motion). This appeal of that denial followed.[2]

## II. Discussion

■ The meaning of the FYCA's language—that "the discharge ... from probation ... shall automatically set aside the conviction"—was the subject of Judge Harold Greene's comprehensive and scholarly opinion for this court in *Webster*, 606 F.2d at 1226. *Webster* relied on the "crystal clear" intent of the Act "to give youthful ex-offenders a fresh start, free from the stain of a criminal conviction, and an opportunity to clean their slates to afford them a second chance in terms of both jobs and standing in the community." *Id.* at 1235. Since, however, the language of the Act sets aside only convictions, and says nothing of arrests, *Webster* ordered the FBI to remove physically from public files only conviction and not arrest records. In addition, *Webster* responded to the government's legitimate law enforcement needs by allowing the conviction records to be used for criminal investigation purposes. Thus, after considering the language, legislative history and purpose of the FYCA, *Webster* interpreted the set-aside provision to require that

> the conviction records must be physically removed from the central criminal files

and placed in a separate storage facility not to be opened other than in the course of a bona fide criminal investigation by law enforcement authorities and where necessary for such an investigation.

606 F.2d at 1244.

*Webster*'s analysis convinces us that the FYCA also requires removal from the public domain of court records documenting the existence of a conviction already set aside. Such records, if open to public scrutiny, are no different in their effect from conviction records in the hands of the FBI; they leave the rehabilitated youth's conviction a matter of public record. In the United States District Court for the District of Columbia, any person walking in off the street, knowing only the name of the convicted youth, can retrieve the court records of his conviction. *Webster* prevents the FBI from responding affirmatively to an employer's call to find out if an employee, or prospective employee, was ever convicted of a crime, when the conviction has been set aside under the FYCA. But, without too much more effort, the employer can get the information from the courthouse. We therefore read *Webster* to require the restriction of public access to court records that document the fact of conviction in set-aside cases.[3]

---

**2.** Appellant asks us to overrule *Webster*'s explicit holding that section 5021 does not provide a basis for restrictions on access to arrest records. *See Webster*, 606 F.2d at 1230–31. We cannot, however, overrule the decision of another panel of this court; a panel's decision may be rejected only by the court en banc. *Brewster v. Commissioner of Internal Revenue*, 607 F.2d 1369, 1373 (D.C.Cir.1979).

Even if we could overrule *Webster*, we would not do so in this case. At argument, appellant's counsel conceded that the Duncan Ordinance, *reproduced in Morrow v. District of Columbia*, 417 F.2d 728, 745–46 (D.C.Cir.1969), precludes dissemination of his arrest records for purposes other than legitimate law enforcement needs. The ordinance permits release of MPD arrest records to the general public only where the arrests have "resulted in convictions or forfeitures of collateral." *Id.* Hence, once appellant's conviction was set aside, the Duncan Ordinance appears to provide the precise remedy he seeks as to his MPD arrest record. There is no evidence that the MPD will disseminate appel-

lant's arrest record in violation of that ordinance.

By reply brief, appellant's counsel also raised, for the first time, the possibility that the Duncan Ordinance bars dissemination of arrest records that the FBI may have received from the MPD prior to the set aside of appellant's conviction. In *Utz v. Cullinane*, 520 F.2d 467 (D.C.Cir.1975), we read the Duncan Ordinance to prohibit routine transfer of MPA arrest records to the FBI. Appellant has given us no reason to believe that the FBI currently possesses arrest records pertaining to him; thus, we refrain from ruling on his need for relief in this regard. Should appellant, in the future, discover that the FBI in fact does have his arrest records, and has placed no formal restrictions on their public dissemination, then he may renew his claim for relief.

**3.** It is clearly not enough for a court merely to expunge those portions of the record that explicitly state that the ex-offender was convicted. The deletion of only those portions of the record attesting to the outcome of the proceed-

Government counsel argues that the language of section 5021 says nothing of court records; it speaks only of convictions. In fact, the provision does not explicitly mention any kind of records. But, as *Webster* made clear, that omission does not indicate congressional intent that conviction records be left open to public inspection. Quite the contrary, the existence of a conviction, *Webster* reasoned, is the target of section 5021. It follows that when court records evidence the conviction, they fall within the language of the set-aside provision as much as FBI records that do presumably the same thing.[4]

The government also argues that sealing court records of any kind contravenes the traditional policy that such records should be open to public scrutiny. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). This argument, of course, is

correct, as far as it goes, but it ignores a long line of precedent and practice establishing that, for good reason, this presumption may be overcome and records may be sealed. Thus courts on their own have frequently invoked equitable powers to seal their records in special circumstances,[5] and numerous statutes provide for sealing.[6] Under section 5021, moreover, restriction on public access is minimized since the trial itself is open, and the court record continues to be available while the appellant is still on probation or parole, before he becomes eligible for a set-aside. By the time the conviction is set aside, after the ex-offender has been discharged from probation, the newsworthiness of (and public interest in) the underlying events will likely have waned. It seems clear to us that Congress' strong interest in giving ex-offenders a fresh start free from the social stigma of conviction[7] led it to override the residual

ings would be a dead give-away to anyone reading the record that a conviction had taken place.

**4.** We did state in *Webster* that open court records do not pose identical hardships on ex-offenders because "questions regarding ... searches of widely-scattered court records are not nearly as prevalent as inquiries concerning convictions at the FBI." 606 F.2d at 1244 n. 61, 1245 n. 67. In *Webster*, however, this court was asked to order expungement of only FBI, Department of Justice, and Customs Bureau records. *See* Complaint at 2, *Doe v. Kelly*, Civ. No. 77–0464 (filed Mar. 17, 1977), *aff'd in part, rev'd in part, and remanded sub nom. Doe v. Webster*, 606 F.2d 1226 (D.C.Cir.1979). Thus, *Webster* did not have to address the question of whether section 5021 requires restricting public access to court records.

**5.** *See Nixon*, 435 U.S. at 608, 98 S.Ct. at 1317 (common-law right of public access to tapes played to jury in public trial does not authorize release of tapes to public); *cf. United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980) (wholesale unsealing of seized documents, some of which were used at pretrial suppression hearing, was improper).

**6.** *See, e.g.*, 21 U.S.C. § 844(b) (upon discharge of drug offender under 21 years old, court record is to be expunged); Mass.Gen.Laws Ann., ch. 276 § 100A (West 1980) (sealing court records of offenses where offender does not commit another offense within 10 years of original misdemeanor conviction or within 15 years of origi-

nal felony conviction); N.Y.Pub.Health Law § 2301 (McKinney 1977) (sealing court records of proceedings for an order compelling examination or isolation of suspected carrier of venereal disease); Ohio Rev.Code Ann. § 2151.358 (Page Supp.1981) (sealing record of rehabilitated "unruly child"); *cf. Webster*, 606 F.2d at 1241–42 (noting statutes that provide for expunging other public records).

**7.** In light of a dearth of statements by legislators, comments of the judicial drafters of the Act made during hearings preceding passage are "uniquely qualified to provide guidance on the meaning of the Act." *Webster*, 606 F.2d at 1235 n. 40; *see also Dorszynski v. United States*, 418 U.S. 424, 432 n. 8, 437–40, 94 S.Ct. 3042, 3047 n. 8, 3049–3051, 41 L.Ed.2d 855 (looking almost exclusively to drafters' testimony in hearings to fathom legislative intent); H.R.Rep. No. 2979, 81st Cong., 2d Sess. 8 (1950), U.S.Code Cong. Serv. 1950, pp. 3983, 3991 ("bill is the product of careful study by Judicial Conference and committees appointed by it"). The drafters repeatedly stressed the purpose of the set-aside provision as being to "blot ... out their sentence and [to] let ... [rehabilitated youthful offenders] go without any stigma on their life." Hearings on S. 1114 and S. 2609 Before a Subcommittee of the Senate Committee on the Judiciary, 81st Cong., 1st Sess. 19 (1949) (Statement of Chief Judge Bolitha J. Laws of the United States District Court for the District of Columbia); *see also id.* at 70 ("the Act does provide for the wiping out of the conviction") (Statement of Judge Orie L. Phillips, of the United States

public interest in knowing about the conviction at that stage.[8]

Just as *Webster* acknowledged the government's legitimate interests in its own access to conviction records for law enforcement and historical accuracy purposes, we honor its similar interests in access to court records. *Webster* struck a balance between the remedial purpose of section 5021 and legitimate government interest in maintenance of conviction records, by ordering that conviction records be physically removed from public files rather than destroyed, 606 F.2d at 1243–44. We strike a similar balance here with respect to court records. Judges and other court officers may need to consult the court records as part of their judicial administrative duties, or if information in the records bears on related cases. Also, law enforcement officials may need to look at the court records or transcripts as part of a related criminal investigation. Thus, in holding that section 5021 mandates limited access to court records of a set-aside conviction, we in no way restrict access to such records by law enforcement personnel or officers of the court who have legitimate law enforcement or judicial administrative purposes for consulting the records. All we require is that court records revealing a set-aside conviction of a FYCA individual not be generally available to the public.[9]

The government finally pleads that special circumstances might make public access especially appropriate in some cases. They offer two examples: (1) where the youthful ex-offender has been tried along with a co-defendant who does not qualify for a set-aside, and (2) where the youth is a repeat offender with a prior set-aside conviction. The first example brings into focus the practical problems of removing court records from public files but, we believe, they can be taken care of administratively.[10] The second example highlights the youthful offender who, in the government's view, may not be deserving of the benefit of expungement because he has already had the benefit once of FYCA treatment and a set-aside. Before a youth is sentenced under the FYCA, the sentencing judge must determine that he can bene-

---

Court of Appeals for the Tenth Circuit). *See generally Webster,* 606 F.2d at 1234–36.

**8.** At least four district courts have ordered court records sealed or expunged under section 5021's set-aside provision. *See United States v. Henderson,* 482 F.Supp. 234, 242 (D.N.J.1979) (restricting access "to the entire record of the youthful offender's criminal episode, from the arrest to the sentence"); *United States v. Blankenship,* No. T–CR–2001 (D.Kan. July 11, 1979) (ordering that "court records pertinent to ... case be sealed") (quoted in *Henderson,* 482 F.Supp. at 242 n. 12); *United States v. [expunged],* No. [expunged] (W.D.La. May 3, 1979) (ordering "expunged from the court records all recordation relating to the charge, arrest, indictment or information, the plea of guilty, and dismissal and discharge"); *United States v. Cuttler,* No. 75 383–Cr–JE (S.D.Fla., Mar. 14, 1979) (ordering expungement of all official records open to public including case files and court records) (cited in *Webster,* 606 F.2d at 1237 n. 47). *But see United States v. Doe,* 556 F.2d 391, 393 (6th Cir.1977) (holding that because set-aside provision did not mandate expungement of records generally, "no provision in the Act authorizes or requires obliteration of the court record of conviction"); *Fite v. Retail Credit Co.,* 386 F.Supp. 1045, 1046 (D.Mont.1975) (FYCA does not prohibit disclosure of court records; "[c]ourt pro-

ceedings are public events and the public has a legitimate interest in knowing the facts in them") (dicta), *aff'd,* 537 F.2d 384 (9th Cir.1976).

**9.** To implement this holding it is necessary that the ex-offender's name be expunged from the central public file (and kept in a separate file). Presumably, this will prevent easy access by an employer, credit reporting agency, or other organization likely to be interested in the conviction of a particular individual, but will keep the record intact for legitimate purposes such as preserving the historic accuracy of the proceedings, *see Webster,* 606 F.2d at 1241, and even for random perusal in aid of "the citizens' ability to keep a watchful eye on government." *See Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312. We leave it to the district court, which is more familiar with its own recordkeeping system, to determine if further procedures are necessary to put our holding into effect.

**10.** For example, the youthful ex-offender's name could be expunged from the central public file, but that of his co-defendant could be kept intact. *See supra* note 9 (expungement of name from central file may be sufficient to meet section 5021's set-aside requirement). Additionally, the youthful ex-offender's name could be excised from publicly accessible copies of the court records.

fit from the provisions of the Act, *i.e.*, that he can be rehabilitated. 18 U.S.C. § 5010. It may be that a youthful offender who has already had one conviction set aside is less likely to meet this threshold determination. But, once a judge determines that the youthful offender can benefit from FYCA sentencing, regardless of prior FYCA treatment, the Act itself provides that if he meets section 5021's criteria then his conviction must be set aside. We hold today that the set-aside includes removal of court records of his conviction from public access, but we can find no authority for applying that rule on a discretionary basis according to the blameworthiness of the ex-offender.

 The government's argument, however, does serve to remind us that there may be situations, which we cannot envision, where access to court records by persons other than court officers and law enforcement personnel might be legitimate and important in the interests of justice.[11] If such situations arise, we do not mean to straightjacket the equitable powers of the district court to allow limited access to court records of previously set-aside convictions. In this case, however, the government concedes that there are no special circumstances weighing against restricting public access. We thus hold that the FYCA's statutory scheme, as interpreted by our prior decision in *Webster*, requires that the court records of appellant's set-aside conviction be removed from public access.

### CONCLUSION

For the foregoing reasons, we conclude that the district court improperly denied appellant's motion to seal court records of his set-aside conviction. We remand for further proceedings consistent with this opinion.

*It is so ordered.*

11. One other important interest in access to a court record comes to mind: use of a witness's statements under oath in the FYCA trial to impeach his testimony in another trial.