**UNITED STATES of America,**

v.

**Monica MONROE, Appellant.**

**No. 91–3241.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1993.

Decided April 30, 1993.

Howard Bramson (appointed by this court) for appellant.

James H. Dinan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black, and Randall D. Eliason, Asst. U.S. Attys., were on the brief, for appellee.

Before MIKVA, Chief Judge, and SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Monica Monroe challenges the sufficiency of the evidence produced at trial to support her conviction for aiding and abetting the possession with intent to distribute

five grams or more of cocaine base under 21 U.S.C. §§ 841(a) and (b)(1)(B)(iii) and 18 U.S.C. § 2. Monroe also challenges her sentence. We find that the Government produced sufficient evidence to support her conviction and that the trial court correctly denied Monroe's request for a reduction in her sentence for acceptance of responsibility. We agree with Monroe, however, that the court erred by granting the Government's request for an enhancement to her sentence for obstruction of justice. We therefore vacate the sentence and remand the case for resentencing.

## I. BACKGROUND

On August 28, 1990, plainclothes police officers investigating narcotics activity in the 5000 block of F Street, S.E., in Washington, D.C., observed what appeared to be narcotics transactions in the backyard of 5036 F Street, S.E. As one of the undercover officers moved closer, most of the people in the yard of 5036 F Street left, but a man and woman sitting a few feet apart from each other remained. The man was later identified as Robert Beckham, and the woman as the appellant, Monica Monroe.

Monroe asked the officer "if he was looking," and sold him 0.41 grams of cocaine base at a purity level of 89 percent. When the officer asked if he could obtain additional crack cocaine, Monroe replied, according to the police, "I only have this one, but you can get one from my buddy," indicating Robert Beckham. Monroe testified that she told the officer he "could get one from anybody out here."

At that point, Beckham stood up, walked to the bench on which Monroe was sitting, leaned down next to it, and picked up a plastic bag containing 34 additional pieces of cocaine base, which weighed a total of 13.02 grams with a purity level of 89 percent. As Beckham sat down on the bench next to Monroe and began to untie the bag, the police officer grabbed it and placed them both under arrest.

The original two-count indictment, filed September 27, 1990, charged Monroe with unlawful distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. § 2 (the aiding and abetting statute). Although charged jointly, Beckham and Monroe were not tried together because Monroe did not appear at the original arraignment, which was scheduled for October 11, 1990.

In explanation of her absence from that proceeding, she asserts that her family did not receive the arraignment notice sent to her home until the day after the scheduled arraignment. Monroe's counsel stated at sentencing that she was in Philadelphia that day and that when she learned of the arraignment notice, she immediately called Pretrial Services and spoke with a Miss Bergin. Miss Bergin instructed Monroe to call back. Monroe did so several times, but she claims that Miss Bergin never told her what action to take. *Transcript of Proceedings,* August 20, 1991, at 3–4.

On December 21, 1990, Monroe was arrested on an outstanding bench warrant issued by the trial court on October 11, 1990. The court had severed Monroe's case from Robert Beckham's, and her trial commenced on March 5, 1991. At trial, the arresting officer testified that the 34 ziplock bags contained pieces of crack cocaine that appeared to be the same size and color as the piece he was given by Monroe. Officer David Stroud, an expert on the use, distribution, and packaging of illegal drugs, testified that most street level drug operations employ more than one person. He described the role of the "runner" (the person who secures customers for the drugs and at times has some to sell) and the "holder" (the person who controls the drugs and the money). Officer Stroud also stated that drugs of identical purity could very well have come from the same larger piece of crack cocaine.

Monroe moved unsuccessfully for a judgment of acquittal at the close of the Government's case-in-chief, and again at the close of her evidence. On March 7, 1991, the jury returned a verdict of guilty on both counts charged, namely, unlawful distribution of cocaine base and possession

with intent to distribute cocaine base. On August 20, 1991, the court sentenced appellant to concurrent terms of imprisonment of 78 months on each count, to be followed by concurrent terms of supervised release of three years on the first count and four years on the second.

## II. DISCUSSION

### A. Sufficiency of the Evidence

█ Monroe argues that there was insufficient evidence to support her conviction for aiding and abetting possession with intent to distribute five grams or more of cocaine base. ·

As we have stated on numerous occasions, "[t]he standard for overturning a guilty verdict on the grounds of insufficiency of evidence is ... a demanding one." *United States v. Lam Kwong–Wah*, 924 F.2d 298, 302 (D.C.Cir.1991). We are "not a second jury weighing the evidence anew." *United States v. Poston*, 902 F.2d 90, 94 (D.C.Cir.1990). Rather, our role is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the. crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

The United States Code provides that "[w]hoever ... aids, abets, counsels, commands, induces or procures [the] commission [of a crime] is punishable as a principal." 18 U.S.C. § 2(a) (1988). Under the "classic interpretation" of this offense,

> [i]n order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." L. Hand, J., in *United States v. Peoni*, 100 F.2d 401, 402 [ (2d Cir.1938) ].

*United States v. Raper*, 676 F.2d 841, 849 (D.C.Cir.1982) (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949)).

Monroe invokes our opinion in *United States v. Poston*, 902 F.2d 90 (D.C.Cir. 1990), to argue that she may not be convicted of aiding and abetting possession with intent to distribute unless evidence is introduced of some affirmative conduct connecting her to Beckham's drug activities. In *Poston*, Monroe notes, we found that the defendant not only drove the seller to the point of sale, but acted as a lookout. *Id.* at 95. She contends that the evidence adduced at her trial shows only.that she was present at the scene of the crime and that such presence qualifies as aiding and abetting only when it intentionally encourages or facilitates the criminal act. Monroe argues that her case is distinguishable from *Poston* because there was no evidence that she had taken any direct action to aid and abet Beckham's possession of the drugs at issue.

Monroe's analysis reflects some confusion over what evidence we require to support a conviction for aiding and abetting another's possession with intent to distribute. Monroe' apparently suggests that the Government must show that she played some physical role, such as serving as a lookout, in securing or retaining possession of the drugs. The issue before us, then, is whether proof of Monroe's involvement in any aspect of Beckham's operation is enough to uphold her conviction.

It is true that in *United States v. Raper*, in a footnote discussing *United States v. Jackson*, 526 F.2d 1236 (5th Cir.1976), a case on which Raper relied, we indicated that *Jackson* held only that "one convicted of aiding or abetting the crime of possession with intent to distribute must give the required statutory support to the *possession* element of the offense as well as the intent to distribute." 676 F.2d at 851 n. 1 (emphasis in original). That statement, however, was not an endorsement of the Fifth Circuit's requirement of affirmative evidence that the defendant at some point actually or constructively possessed the. drugs. We have since made our position on this point clear.

█ In *United States v. Garrett*, 720 F.2d 705 (D.C.Cir.1983), we wrote that

"*Jackson* ignores the breadth of the aiding and abetting statute." *Id.* at 713 n. 4. We also affirmed that "18 U.S.C. § 2 codified the common law relating to accessories, making one who assists the perpetrator of the crime while sharing the requisite criminal intent liable as a principal." *Id.* at 713 (internal quotes omitted). We explained that to sustain a conviction for aiding and abetting, "all that is necessary is to show some affirmative participation which at least encourages the principal offender to commit the offense, with all its elements, as proscribed by the statute." *Id.* at 713–14. Thus, one may "abet" the crime of possession with intent to distribute by acting as a middleman, by "procuring the customers and maintaining the market in which the possession is profitable, even though [the defendant does] nothing else to help the possessor get or retain possession." *United States v. Wesson,* 889 F.2d 134, 135 (7th Cir.1989) (joining this circuit "in saying *nay* to *Jackson* ").

■ Under the law of this circuit, therefore, the Government need not show that appellant served as a lookout, or even that she took some active role in getting or protecting the drugs. It is enough for the Government to establish Monroe's involvement in the general scheme, thereby assisting or encouraging Beckham's possession of the drugs with intent to distribute them. The evidence is sufficient to support Monroe's conviction if the Government proves that Monroe acted as a middleman—"procuring the customers and maintaining the market in which the possession is profitable." *Wesson,* 889 F.2d at 135.

Viewed in the light most favorable to the Government, the evidence shows that Monroe procured a customer and served to "maintain the market" by asking the officer if he was "looking," and referring him to Beckham with the remark that he could "get one from my buddy." When combined with the expert testimony and the acknowledged fact that these transactions had taken place in her yard, we find this evidence more than sufficient to persuade a rational trier of facts that Monroe was guilty beyond a reasonable doubt.

**B. Acceptance of Responsibility**

■ Monroe argues that she should have received a two-level decrease in her offense level for acceptance of responsibility. Monroe notes that she admitted under oath that she sold narcotics to a police officer and that she contested only one piece of evidence at trial: the characterization of her response to the police officer's request for more cocaine base. Monroe testified that she answered "you can get one from anybody," while the police version has her answering that "you can get one from my buddy." As this is a factual disagreement, and not a legal one, Monroe argues that she is entitled to this reduction.

Under the *Sentencing Guidelines,* "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct," the offense level will be reduced by two levels. U.S.S.G. § 3E1.1(a) (November 1990). The commentary to this section highlights the district court's "unique position to evaluate a defendant's acceptance of responsibility." *Id.,* comment. (n. 5). In recognition of this unique position, the trial court is entitled to "great deference on review." *Id.*

This court has made clear that denial of this adjustment is warranted when the defendant fails to accept responsibility for all conduct related to the offense of conviction. *United States v. Taylor,* 937 F.2d 676, 680–81 (D.C.Cir.1991). Monroe's rejection of the police officer's version of the events constitutes much more than a disagreement over the characterization of her conduct. Rather, her version of the events constitutes a disavowal of any involvement with Beckham and the 34 grams of cocaine base he pulled from beneath the bench. This disavowal represents a failure to accept responsibility for the conduct related to the charge of aiding and abetting possession with intent to distribute cocaine base. The trial court did not abuse its wide discretion, therefore, in denying this adjustment to appellant's sentence.

**C. Obstruction of Justice**

■ Monroe submits that the trial court erred by imposing a two-level increase on

her sentence for obstruction of justice based on her failure to appear at the October 1990 arraignment. To begin with, she argues, it was not until the 1990 Guidelines Manual became effective (in November 1990 and after the conduct at issue here) that the *Application Notes* to guideline 3C1.1 described a defendant's willful failure to appear as an "obstruction of justice"; furthermore, application of the 1990 Manual to an offense that occurred prior to the effective date of those amendments violates the Constitution's *Ex Post Facto* Clause. Second, Monroe argues that her conduct was not willful; therefore, an increase under either the 1989 or the 1990 Guidelines Manual is not warranted.

*1. Application Notes*

The 1989 version of the *Application Notes* for guideline 3C1.1 included a list of conduct that, "while not exclusive," provided "a basis for applying" a two-level increase for the willful obstruction of justice. U.S.S.G. § 3C1.1, comment. (n. 1) (November 1989). That non-exclusive list did not include "failure to appear." The 1990 version of the *Notes*, however, included in *its* "non-exhaustive" list of "types of conduct" to which the guideline applied, "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding...." U.S.S.G. § 3C1.1, comment. (n. 3(e)) (November 1990). In other words, the amendment to the *Notes* merely adds another example of the kind of conduct that is to be found obstructive; it does not change the reach of the guideline itself.

Other circuits have found that the version of the guideline in effect in 1989 reached failure-to-appear or similar conduct. *See id.; United States v. Teta,* 918 F.2d 1329, 1334–35 (7th Cir.1990) ("defendant's willful failure to appear"); *United States v. Perry,* 908 F.2d 56, 59 (6th Cir. 1990) (defendant "jumped bond before sentencing"); *United States v. Avila,* 905 F.2d 295, 297 (9th Cir.1990) (defendant "absconded from supervised [pretrial] release and remained a fugitive for five months"); *United States v. Keats,* 937 F.2d 58, 67 (2d Cir.) ("intentional flight from judicial pro-

ceedings is sufficient to support imposing an obstruction enhancement"), *cert. denied,* —— U.S. ——, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991); *United States v. St. Julian,* 922 F.2d 563, 571 (10th Cir.1990) (failure to appear at sentencing hearing constitutes obstruction of justice, though defendant subsequently turned himself in). We are in accord. If giving a false name at the time of arrest can be said to "impede" justice, then surely the failure to appear at a judicial proceeding may be said to do the same. Because we find that the change in the *Application Notes* did not effect a change in the guideline, we do not reach appellant's *ex post facto* argument.

*2. Willful Failure to Appear*

■ The question remains whether Monroe's conduct constituted a *willful* obstruction of justice. U.S.S.G. § 3C1.1 (November 1989).

The trial court found that Monroe acted willfully because she "failed to turn herself in after she realized that she had missed her arraignment date," and because she "knew, or should have known, that she was not to have left the District of Columbia." *Transcript of Proceedings,* August 20, 1991, at 2, 5. The Government suggests that *United States v. Teta,* 918 F.2d 1329, 1334 (7th Cir.1990), and *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.1990), provide support for this proposition. We do not agree.

In *Teta,* the defendant confused two Wisconsin cities beginning with the letter "M," travelled to Milwaukee instead of Madison, and thereby missed an arraignment scheduled for August 1, 1989. *Teta,* 918 F.2d at 1331. Teta telephoned the Clerk of the Court to arrange a new date. *Id.* According to the deputy clerk, Teta agreed to a rescheduled appearance for August 4. Teta claimed that they had agreed to an appearance on August 11. He was arrested on a bench warrant when he failed to appear for the August 4 hearing. *Id.* at 1331–32.

The district court credited the deputy clerk's testimony, and thus it "found that

Teta fully understood the mandate to appear on August 4 after he had missed the August 1 arraignment." *Teta*, 918 F.2d at 1334. This evidence provided the basis for finding that Teta's second failure to appear was willful, "because he knew the requirements and yet voluntarily and intentionally failed to appear." *Id.*

Similarly, in *United States v. Perry*, the defendant was instructed to report for an interview with a probation officer on August 2, 1988, but failed to keep the appointment. 908 F.2d 56, 58 (6th Cir.1990). On appeal, the court noted that Perry admitted to having disobeyed an explicit instruction to keep the appointment and stated that this was "enough" to find an obstruction of justice. *Id.* at 59.

These decisions flow logically from the definition of the word "willful," which, this court has suggested, "requires that the defendant consciously act with the purpose of obstructing justice." *United States v. Thompson*, 962 F.2d 1069, 1071 (D.C.Cir. 1992) (citing *United States v. Lofton*, 905 F.2d 1315, 1317 (9th Cir.1990)). Central to both *Teta* and *Perry* was the defendant's knowledge of the requirements placed upon him by the court and his conscious decision to ignore its mandate.

In this case, by contrast, Monroe presented unrebutted evidence that the letter announcing the arraignment arrived at her address one day after that hearing took place. *Transcript of Proceedings*, August 20, 1991, at 3. Her initial failure to appear cannot therefore be labelled "willful," as she could not have ignored a mandate that she had not received.

As to Monroe's failure to turn herself in, the record indicates that Monroe made affirmative and documented efforts to determine what action was required of her by placing several calls to Pretrial Services. That office confused her; it failed to answer her questions and did not provide her with explicit instructions. *Id.* at 3–4. Unlike *Teta*, there is no evidence in the record that Monroe made a second appointment. Unlike *Perry*, there *is* evidence that Monroe was never told what action to take. Perhaps most importantly, defense counsel

informed the court that Miss Bergin, of Pretrial Services, was prepared to testify in support of Monroe's account of the events. *Transcript of Proceedings*, August 20, 1991, at 4. As that offer was not accepted, nor counsel's account of Monroe's efforts rebutted, we must assume that she tried to discover what was required of her but gave up the effort after several attempts.

We "will uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous." *United States v. Barry*, 938 F.2d 1327, 1332 (D.C.Cir.1991) (citations omitted). On this record, where the Government has presented no evidence to contradict Monroe's version of the events, we find that the trial court clearly erred in holding that Monroe acted willfully. We therefore find that the two-level enhancement for willful obstruction of justice cannot be upheld.

### III. CONCLUSION

The Government provided sufficient evidence from which a rational juror could have found Monroe guilty beyond a reasonable doubt of aiding and abetting possession with the intent to distribute. Under the law of this circuit, it is enough that her help in attracting customers and maintaining a market for Beckham's drug transactions was such that his possession of the drugs was profitable. As to appellant's sentence, it is clear that Monroe did not accept responsibility for the conduct for which she was charged. There is no evidence in the record, however, to support the enhancement for willful obstruction of justice.

Accordingly, we affirm appellant's conviction but vacate her sentence and remand to the trial court for resentencing consistent with this opinion.

*So ordered.*