Tyrone OWENS, Appellant,

and

Norman Williams, Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CF–518, 95–CO–1440 and 94–CF–472.

District of Columbia Court of Appeals.

Argued Nov. 12, 1996.

Decided Dec. 30, 1996.

George E. Rickman, for appellant Tyrone Owens.

James G. Walker, Washington, for appellant Norman Williams.

John Crabb, Jr., Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Jennifer M. Anderson, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and RUIZ, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellants Tyrone Owens and Norman Williams were convicted by a jury of distribution of a controlled substance and possession with intent to distribute (PWID), in violation of D.C.Code § 33–541(a)(1) (1993 Repl.). On appeal appellants advance a litany of errors regarding multiplicity of charges, sufficiency of the evidence, sentencing, and a series of contentions challenging the exercise of the trial judge's discretion. We affirm.

## I.

In September 1993, shortly after noon, undercover officer Larry Hale parked near the corner of 16th and E Streets, Northeast. When he exited his car, appellant Owens beckoned to him and asked Hale if he wanted to buy drugs. Hale responded he wanted to buy $20 worth of crack. Owens then led Hale to the 400 block of 18th Street near the intersection with D Street. There Owens said, "Give me your money." Hale gave him a twenty dollar bill from which he had previously transcribed the serial number. Owens took the money and walked over to appellant Williams, who pulled a brown bag out of his pants. Williams took a small object from the bag and handed it to Owens, who gave him the money. Owens then returned to Hale and handed him a blue "ziplock" bag containing crack. Hale took the crack, returned to his car, and broadcast a lookout for the appellants. The arrest team apprehended Williams. Hale later drove by and identified him. Williams had $221 in cash, including the prerecorded $20 bill that Hale had given to Owens, and two blue "ziplock" bags containing crack. Appellant Owens was later apprehended by the arrest team.

## II.

### A. Insufficiency of the Evidence

Both appellants contend the evidence was legally insufficient to support their convictions for possession of a controlled substance with intent to distribute. In particular, appellant Owens asserts that the evidence was inadequate to convict him as an aider and abetter.

We begin with the familiar premise that this court must view the evidence in the light most favorable to the government and affirm if "there was sufficient evidence 'from which a reasonable mind might fairly infer guilt beyond a reasonable doubt.'" *Blakeney v. United States,* 653 A.2d 365, 369 n. 3 (D.C. 1995) (quoting *Gayden v. United States,* 584 A.2d 578, 580 (D.C.1990), *cert. denied,* 502 U.S. 843, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991)). All reasonable inferences must be drawn in favor of the government, and deference must be given to the jury's right to

determine credibility and weigh evidence. *Id.*

■ The evidence shows that appellant Williams had multiple packages of cocaine on his person, one of which was sold to a stranger introduced by appellant Owens. After the sale, at the time of arrest, Williams possessed two additional bags of crack and a large sum of money, including Officer Hale's pre-recorded currency. From these circumstances, along with the expert testimony, a jury could readily conclude that Williams was in possession of the drugs with intent to distribute them. *See Edmonds v. United States,* 609 A.2d 1131 (D.C.1992) (evidence deemed sufficient in circumstances where defendant possessed five small "ziplock" bags of drugs), *cert. denied,* 508 U.S. 980, 113 S.Ct. 2983, 125 L.Ed.2d 679 (1993).

■ With respect to appellant Owens, we consider the government's theory of aiding and abetting as it overlays the sufficiency question. In general, one may be convicted on a theory of aiding and abetting if one knowingly associates oneself with a criminal venture and engages in conduct in furtherance of the offense. *See, e.g., Wright v. United States,* 508 A.2d 915, 918 (D.C.1986); *United States v. Monroe,* 301 U.S.App.D.C. 100, 990 F.2d 1370 (1993). It is not necessary that such an accomplice personally do all the acts necessary for commission of the offense. *See Monroe,* 990 F.2d at 1374 (" 'all that is necessary is to show some affirmative participation which at least encourages the principal offender to commit the offense' ").

Appellant Owens asserts that if we exclude the evidence of the initial sale, and view the case thus, there is inadequate evidence to prove that he intended to participate in a future sale. In this instance, Owens encountered a stranger on the street, who happened to be an undercover police officer, and initiated a drug sale. He led the officer at least three city blocks to the site of the sale. He received money from the officer and ulti-

mately handed the drugs to the officer. As stated, when arrested, appellant's co-defendant possessed other packets of drugs and over two hundred dollars.

■ The offense of which appellant was convicted, possession of narcotics with intent to distribute them, like some forms of assault, attempt, and conspiracy, is an inchoate offense. Thus it is contemplated that the violation can occur without completion of the objective. Although it is true that in *Allen v. United States,* 580 A.2d 653 (D.C.1990), defendant was observed reaching out to a prospective buyer with a tinfoil packet in hand, and in *United States v. Monroe, supra,* defendant, after completing a sale, offered to assist the buyer to make a second purchase from another seller, it does not follow that evidence of an initial sale must or should be excluded from consideration of a subsequent PWID charge. Rather, the appropriate inquiry is whether appellant Owens knowingly associated himself with intended future sales and took action in furtherance of it. Thus, the court, in *Monroe, supra,* 990 F.2d at 1374, noted that one may "abet" this particular offense by maintaining the market, procuring customers, or acting as a broker. At bottom, Owens asks us to alter the sufficiency principle to support his factual challenge in this case. We decline to do so.

■ We conclude the jury may properly consider all of the material circumstances bearing on an accused's conduct relevant to the PWID charge including evidence of the sale for which Owens was convicted of distribution. Applying the sufficiency test to the instant evidence, including the expert testimony,[1] we conclude that although the evidence was not overwhelming that Owens intended to assist Williams in further sales of crack, a reasonable juror could, but is not compelled to, find guilt under the circumstances. Thus the evidence in this case is sufficient as to appellant Owens.[2]

---

1. An expert testified that Owens was operating as a "runner" and Williams as a "holder." The runner brings potential customers to the holder who possesses the drugs. Often after a transaction the two may part company.

2. Appellants also contend that the indictment was multiplicitous because they were charged with both distribution of crack and possession with intent to distribute crack. We reject this contention because the two charges involved separate quantities of drugs and are separate of-

## B. Abuse of Discretion

Appellants raise a number of issues challenging the trial court's discretion. Because we find that the court did not abuse its discretion regarding any of the following issues, we find these arguments to be without merit.

 Appellants assert the trial court erred in allowing the government expert to testify. The admission of expert testimony lies within the trial court's discretion. *Blakeney, supra,* 653 A.2d at 369. Expert testimony is admissible if it will help the jury understand the facts of the case or understand "matters 'beyond the ken of the average lay[person].' " *Griggs v. United States,* 611 A.2d 526, 528 (D.C.1992) (citations omitted). Here the expert, a detective with the Metropolitan Police Department, explained how police test and handle drugs that they seize. He also stated his opinion why he thought that the crack taken from Williams was packaged for sale. Finally, he explained how "runners" and "holders" work together to sell drugs. We find the trial court did not abuse its discretion when it allowed this testimony.[3]

 Appellants also challenge the trial court's refusal to allow an eight-year-old child to testify. The determination of the competency of a witness to testify lies within the discretion of the trial court and will not be disturbed unless it is plainly wrong. *Howard v. United States,* 663 A.2d 524, 530 (D.C.1995). Here, the trial court conducted a voir dire of an eight-year-old prospective witness. *See Barnes v. United States,* 600 A.2d 821, 823 (D.C.1991) (noting a preliminary examination is appropriate for a young witness to determine if she can recall the events about which she will testify and whether she understands the difference between the truth and a falsehood). During the voir dire the child was unable to fully recall the pertinent events. She specifically stated that she did not understand the difference between the truth and a lie. Accordingly, the judge's determination that she was not competent to testify was not an abuse of discretion.[4]

 Appellant Williams claims there was prosecutorial misconduct during closing argument when the prosecutor asserted it was undisputed that drugs were found on Williams. It is urged that this assertion violated his Fifth Amendment right not to testify. In reviewing allegations of prosecutorial misconduct, this court first determines whether the action actually constituted misconduct and, second, weighs several factors to determine if the misconduct requires reversal of the conviction. *Gray v. United States,* 589 A.2d 912, 916 (D.C.1991). Because we find there was no prosecutorial misconduct, we need not move to the second stage of the analysis. Appellant Williams does not cite anything in the record that rises to the level of prosecutorial misconduct. Even if the prosecutor's statement is construed as stating Williams' possession of the drugs was uncontradicted, it would still have been proper. *See Jackson v. United States,*

fenses. We have repeatedly held that one who sells a drug and retains a quantity of the drug for future sales has committed two crimes: distribution of the former quantity and possession with intent to distribute the latter quantity. *See, e.g., Guishard v. United States,* 669 A.2d 1306 (D.C. 1995); *Lawrence v. United States,* 603 A.2d 854, 856 n. 2 & 857 n. 4 (D.C.1992); *Thomas v. United States,* 602 A.2d 647 (D.C.1992); *Ware v. United States,* 579 A.2d 701 (D.C.1990); *Smith v. United States,* 549 A.2d 1119 (D.C.1988).

3. Appellants maintain there was an abuse of discretion in refusing to grant a continuance for the appellants to call an expert. The grant of a continuance is clearly within the discretion of the trial judge and the party seeking the continuance must demonstrate that it is " 'reasonably necessary for a just determination of the cause.' "

*O'Connor v. United States,* 399 A.2d 21, 28 (D.C. 1979) (quoting *Brown v. United States,* 244 A.2d 487, 490 (D.C.1968)). On this record, there is no showing of an abuse of the court's discretion.

4. Appellant Williams claims evidence he offered was improperly excluded. Determining the relevance of evidence is committed to the sound discretion of the trial court. *Blakeney, supra,* 653 A.2d at 368. Relevant evidence "must 'tend[] to make the existence or nonexistence of a fact more or less probable than would be the case without that evidence.' " *Dade v. United States,* 663 A.2d 547, 552 (D.C.1995) (quoting *Punch v. United States,* 377 A.2d 1353, 1358 (D.C.1977), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978)). Both instances of asserted error relating to the exclusion of proffered evidence are unpersuasive.

623 A.2d 571 (D.C.), *cert. denied,* 510 U.S. 1030, 114 S.Ct. 649, 126 L.Ed.2d 607 (1993). We have held that a defendant's "Fifth Amendment right 'does not preclude the prosecutor from emphasizing to the jury that the government's evidence [is] uncontradicted.'" *Id.* at 586 (quoting *Boyd v. United States,* 473 A.2d 828, 833 (D.C.1984)).

▮▮▮ Appellants also claim the trial court should have declared a mistrial when, during deliberations, the jury asked about "Tyrone Green," a name listed on the DEA–7 that was admitted into evidence. The prosecutor explained to the court that this was the alias given by appellant Owens and that the government had neglected to explain its significance to the jury. It is within the court's discretion to grant a mistrial when a party has shown prejudice. *Smith v. United States,* 665 A.2d 962, 966 (D.C.1995). The denial of a mistrial under these circumstances was not an abuse of discretion. After the jury asked about "Tyrone Green," appellants suggested that the judge tell the jury that the name was a mistake and that the jury should ignore it. The judge did exactly that. *See Brown v. United States,* 627 A.2d at 499 (D.C.1993). It is clear that the brief instruction was not prejudicial, and in fact was helpful, because Owens' alias could have been properly admissible on other grounds.

▮▮▮ Appellants contend they should be resentenced without the mandatory-minimum sentences. Their argument fails because of this court's decision in *Holiday v. United States,* 683 A.2d 61 (D.C.1996), where we held that "mandatory-minimum sentencing is required in all cases of offenses committed before May 25, 1995, the effective date of the statute repealing mandatory-minimum sentences." *Id.* at 90. Because appellants committed the offenses on September 11, 1993, before the effective date of repeal, their mandatory-minimum sentences must be upheld.

▮▮▮ Appellant Owens also claims that he should have received the "addict exception" and thus escaped the mandatory-minimum sentence. We review this argument for an abuse of discretion, *Mozelle v. United States,* 612 A.2d 221, 224 (D.C.1992), and conclude Owens was properly sentenced.

Under the sentencing structure at that time, a defendant was eligible for the "addict exception" if he could establish (1) that he was an addict, (2) that he committed the offense primarily to support his addiction, and (3) that he had not been previously convicted of distributing drugs or possessing them with intent to distribute. D.C.Code § 33–541(c)(2) (repealed 1995). Here Owens was not eligible for the addict exception because he had previous convictions in Florida for distributing and possessing with intent to distribute cocaine. *See Shabazz v. United States,* 606 A.2d 191 (D.C.1992) (affirming denial of addict exception because the defendant had an out-of-state conviction for distributing drugs).

## C. Plain Error

▮▮▮ Appellant Williams argues that the government should not have been allowed to present a rebuttal case and that the rebuttal testimony contained hearsay. Because he did not object to the government's presentation of rebuttal evidence, this claim is reviewed for plain error. *See Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc). Whether rebuttal evidence is allowed lies within the discretion of the trial court. *Fitzhugh v. United States,* 415 A.2d 548, 551 (D.C.1960). When a defendant presents evidence regarding a certain issue, the government may present evidence to the contrary. *See Johns v. United States,* 434 A.2d 463, 469 (D.C.1981) (allowing rebuttal evidence of victim's gentle character after defendant presents evidence of victim's violent character). Here appellant Williams' witness testified that she had witnessed appellant Williams being searched and that the police did not recover any drugs. As rebuttal, the government called Sergeant Wilson of the arrest team who testified that the witness was not present during the search of appellant Williams. Instead she arrived after the search had been concluded. Because the testimony was presented to contradict a portion of Williams' case and was not redundant to the government's case-in-chief, the rebuttal was proper and certainly not plain error.

*Affirmed.*

SCHWELB, Associate Judge, concurring:

I am pleased to join Judge Pryor's opinion for the court. I think it worthwhile, however, to add some thoughts about our conclusion that the evidence was sufficient to support Owens' conviction for PWID.

There can be no doubt, if the prosecution's testimony is credited, that Owens participated in the sale of a zip-lock bag of crack cocaine to Larry Hale, an officer of the Metropolitan Police Department who was working under cover. A substantially more difficult question is presented as to whether the government proved beyond a reasonable doubt that Owens (jointly with Williams) possessed the two bags of cocaine recovered from Williams with the intent to distribute them, or that Owens aided and abetted Williams' PWID of those two bags. Owens contends, in effect, that the evidence was insufficient as a matter of law to convict him of PWID. Although I disagree with Owens' position, his argument is by no means implausible.

The government's evidence in this case is entirely consistent with the hypothesis that although Owens was aware of Williams' drug selling operation,[1] his own connection to that operation was confined to the sale of a single bag of crack cocaine. Nothing in the record contradicts the possibility that Owens wanted some quick money (or cocaine) and thus participated in the sale of a single packet, but that he engaged in no activity related to (and indeed had no interest in) any other contraband which Williams might wish to sell.[2] We are thus confronted with a situation in which, even if everything happened just as the prosecution witnesses recounted it, Owens could nevertheless be not guilty of PWID.

There is case law in this jurisdiction suggesting that under these circumstances, the government's evidence was insufficient as a matter of law. In *Hammond v. United States*, 75 U.S.App.D.C. 397, 127 F.2d 752 (1942) (per curiam),[3] the court stated:

> Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt it is the duty of the trial judge to instruct the jury to return a verdict for the accused, and where all the substantial evidence is as consistent with innocence as with guilt it is the duty of the appellate court to reverse a judgment against him.

*Id.* at 398, 127 F.2d at 753 (quoting *Isbell v. United States*, 227 F. 788, 792 (8th Cir.1915).[4] The decision in *Hammond* was unanimous. In the present case, I would not be prepared to say that the evidence, viewed in the light most favorable to the prosecution, "exclude[s] every other hypothesis but that of guilt." Owens' PWID conviction would, at best, be quite shaky under the *Hammond* analysis.

We are, of course, required to follow a decision of the United States Court of Appeals for the District of Columbia Circuit issued prior to February 1, 1971, unless that decision has been overruled by this court sitting en banc. *See M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971), or by the Supreme Court of the United States. Moreover, one panel of the United States Court of Appeals lacks the authority to overrule the decision of a prior panel; only the full court, sitting en banc, may do so. *See, e.g., United States v. Doe*, 235 U.S.App.D.C. 99, 101 n. 2, 730 F.2d 1529, 1531 n. 2 (1984); *Thompson v. Thompson*, 100 U.S.App.D.C. 285, 286 & n. 1, 244 F.2d 374, 375 & n. 1 (1957).[5] If a situation

---

1. Upon learning that Officer Hale wanted to purchase some crack, Owens escorted Hale several blocks to the location at which Williams was conducting his illicit enterprise.

2. It is also true, however, that Owens introduced no evidence in support of any such hypothesis.

3. It is noteworthy that Judge (later Justice) Rutledge was a member of the court that decided *Hammond*.

4. In *Isbell*, Judge Sanborn, writing for a majority of the court, cited numerous authorities in support of this formulation, and he wrote a spirited

defense of it. 227 F. at 792–93. It is not at all obvious to me that the modern authorities are right and that *Isbell* is wrong.

5. "It is an informal but generally accepted rule of this court that a recent opinion of a division may not be overruled by another panel of judges, but only by the full bench." *Mallory v. United States*, 104 U.S.App.D.C. 71, 72, 259 F.2d 801, 802 (1958) (per curiam).

arises in which a division of this court (or of the United States Court of Appeals) has failed to follow a legal rule established by pre-*M.A.P.* District of Columbia Circuit precedent, we are obliged to follow the precedent which has been improvidently ignored. *See Taylor v. First Am. Title Co.,* 477 A.2d 227, 230 (D.C.1984); *Mims v. Mims,* 635 A.2d 320, 329 (D.C.1993) (Ferren, J., dissenting, on a point not reached by the majority). Unless *Hammond* has been appropriately overruled, we are bound by that decision.

For almost fifty of the fifty-five years since *Hammond* was decided, however, the rule of that case has been honored more in the breach than in the observance. In *Curley v. United States,* 81 U.S.App.D.C. 389, 160 F.2d 229, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947), a case involving a colorful politician who exercised his authority as Mayor of Boston while serving a sentence for conspiracy to commit mail fraud, a sharply divided court acknowledged the language from *Hammond* quoted above, but gave it short shrift:

It is true that the quoted statement seems to say that unless the evidence excludes the hypothesis of innocence, the judge must direct a verdict. And it also seems to say that if the evidence is such that a reasonable mind might fairly conclude either innocence or guilt, a verdict of guilt must be reversed on appeal. But obviously neither of those translations is the law. Logically, the ultimate premise of that thesis is that if a reasonable mind might have a reasonable doubt, there is, therefore, a reasonable doubt. That is not true. Like many another rule become trite by repetition, the quoted statement is misleading and has become confused in application.

81 U.S.App.D.C. at 392, 160 F.2d at 232. After explaining in some detail the respective functions of the judge and jury, the majority opinion continued:

The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.

*Id.* at 392–93, 160 F.2d at 232–33.

The court in *Curley* acknowledged that "the view which we take is perhaps at variance with the views which have been taken by some of the Circuit Courts of Appeal." *Id.* at 395 n. 31, 160 F.2d at 235 n. 31 (citing contrary authority from the Second, Third, Eighth and Tenth Circuits). Judge Wilbur K. Miller dissented, noting that the majority's position had been rejected in *Hammond* "by an able and unanimous court, after having attention sharply called to the theory which the opinion in this case says is the 'true rule.'" *Id.* at 401, 160 F.2d at 241. Nevertheless, since *Curley,* the United States Court of Appeals has followed the majority approach in that case, and not the unanimous decision in *Hammond. See United States v. Harris,* 140 U.S.App.D.C. 270, 286, 435 F.2d 74, 90 (1970).

For many years, this court has likewise followed the articulation of the majority opinion in *Curley,* and has implicitly rejected the more rigorous standard in *Hammond.* In *Patten v. United States,* 248 A.2d 182 (D.C. 1968), decided three years prior to *M.A.P. v. Ryan,* we stated, citing *Curley,* that the government "need not negate all inferences consistent with innocence." *Id.* at 183 (footnote omitted). One year after the *M.A.P.* decision, we described as "well settled law" the proposition that "the government is not required to negate every possible inference [of innocence] before an accused can be found guilty of an offense beyond a reasonable doubt." *In re T.J.W.,* 294 A.2d 174, 176 (D.C.1972) (citing *Banks v. United States,* 287 A.2d 85, 87 (D.C.1972)). We have adhered to that approach ever since. *See, e.g., Chaconas v. United States,* 326 A.2d 792,

797–98 (D.C.1974); *Irick v. United States,* 565 A.2d 26, 30 (D.C.1989).

Notwithstanding the imposing array of modern District of Columbia authority standing for the proposition that *Curley* is right and that *Hammond* is wrong, I would still have some trepidations as to how we (and our colleagues across the street) got from there to here [6] were it not for the Supreme Court's jurisprudence beginning with *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). There, the trial judge had declined the defendant's request to instruct the jury that where the government's evidence is circumstantial, it must be such as to exclude every reasonable hypothesis other than guilt. The Supreme Court noted that "there is some support of this type of instruction in the lower court decisions," *id.* at 139, 75 S.Ct. at 137 (citations omitted), but went on to state:

> [T]he better rule is that where the jury is properly instructed on the standard for reasonable doubt, such an additional instruction on circumstantial evidence is confusing *and incorrect.*

*Id.* at 139–40, 75 S.Ct. at 137 (emphasis added) (citations omitted). Subsequently, in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court stated that the *Curley* standard "is now the prevailing criterion for judging motions for acquittal in federal criminal trials." *Id.* at 318 n. 11, 99 S.Ct. at 2789 n. 11 (citing 2 CHARLES WRIGHT, FEDERAL PRACTICE AND PROCEDURE, (1969 & Supp.1978)).

The quoted passage in *Holland* related to jury instructions, but the Court's discussion would make no sense if the prosecution were required, in every case, to negate every hypothesis other than guilt. The Supreme Court's subsequent discussion in *Jackson* reinforces that conclusion. Both the United States Court of Appeals and this court have relied on *Holland* as providing support for the *Curley* formulation as to evidentiary suf-

ficiency. *See Harris, supra,* 140 U.S.App. D.C. at 286, 435 F.2d at 90; *Chaconas, supra,* 326 A.2d at 797. Accordingly, notwithstanding *M.A.P. v. Ryan,* and the federal appellate court's analogous informal rule, the *Hammond* approach is no longer binding authority in this jurisdiction.

Applying the *Curley* standard to the case at hand, I am bound to agree with Judge Pryor that the evidence was sufficient to sustain Owens' conviction for PWID. To be sure, an impartial juror would not be *compelled* to conclude, on the basis of the government's evidence, that Owens, jointly with Williams, possessed the two packets with the intent to distribute them, or that he aided and abetted Williams' selling operation in relation to those two packets. In my opinion, however, Owens' complicity in Williams' PWID could reasonably be inferred from the evidence, and Owens has presented nothing of substance to refute that inference. Accordingly, I vote to affirm Owens' conviction for PWID, and I also join Judge Pryor's opinion for the court in all other respects.

---

**6.** [T]he panel's disregard of a controlling precedent of this Court is troubling. It is a fundamental maxim that judges "must act alike in all cases of like nature." *Rex v. Wilkes,* 98 Eng.Rep. 327, 335 (1770). Whatever the practical effects of this opinion, litigants attempting to determine what law controls in this circuit should not be faced with irreconcilable decisions.
*Birt v. Surface Transportation Bd.,* 321 U.S.App. D.C. 195, 98 F.3d 644, 645 (1996) (Sentelle J., with whom Silberman, Williams and Ginsburg, JJ. join, concurring in denial of rehearing en banc).